# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIFE VAC LLC,<br><br>      Plaintiff,<br><br>     v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>     Defendants. | Case No.: 2:24-cv-01443 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY ASSET RESTRAINT, AND AN <u>ORDER FOR EXPEDITED DISCOVERY</u>

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II. STATEMENT OF FACTS .....................................................................................3

    A.  Plaintiff's Intellectual Property Protects Its Successful Life Vac Brand ...............3

    B.  Defendants Are Counterfeiters of Life Vac Products .............................................4

        1.  Defendants Operate Legitimate-Looking Internet Stores ...........................5

        2.  Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines ...........................................................................................6

        3.  Defendants Conceal Their Identities ..........................................................6

        4.  Defendants Evade Enforcement .................................................................7

III. ARGUMENT .........................................................................................................8

    A.  This Court May Exercise Personal Jurisdiction Over Defendants ..........................9

    B.  Standard for Temporary Restraining Order and Preliminary Injunction ...............11

    C.  Plaintiff Will Likely Succeed on the Merits .........................................................11

        1.  Plaintiff Will Likely Succeed on Its Copyright Infringement Claim.........11

        2.  Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim. ..............................................................................13

        3.  Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim. .16

        4.  Plaintiff Is Likely to Succeed on Its New York Unfair Competition Claim. ........................................................................................................17

    D.  There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief .......................................................17

    E.  The Balancing of Equities Tips in Plaintiff's Favor .............................................19

    F.  Issuance of the Injunction Is in the Public Interest. ..............................................20

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE. ...........................................21

    A.  A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate. ........................................22

B.    Preventing the Fraudulent Transfer of Assets Is Appropriate. ..............................23

C.    Plaintiff Is Entitled to Expedited Discovery ..........................................................25

V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ..........................................26

VI.   CONCLUSION...................................................................................................................27

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3M Company v. CovCare, Inc.,*
2021 WL 7162292, (E.D.N.Y. Apr. 7, 2021) ................................................................. 11

*Alcon Laboratories, Inc. v. Allied Vision Group, Inc.*,
2018 WL 10550777 (E.D.N.Y. Dec. 22, 2018) ............................................................. 10

*Animale Grp. Inc. v. Sunny's Perfume Inc.*,
256 F. App'x 707 (5th Cir. 2007) ............................................................................ 24, 25

*Broadcast Music, Inc. v. 3 Lanza LLC,*
2021 WL 25355 (E.D.N.Y. Jan. 4, 2021) ...................................................................... 20

*C.M.B. Prods., Inc. v. SRB Brooklyn, LLC*,
2022 WL 2704506 (E.D.N.Y. July 12, 2022) ................................................................ 14

*Cengage Learning, Inc. v. Doe 1,*
2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018) .......................................................... passim

*Century Home Entertainment, Inc. v. Laser beat, Inc.*,
859 F. Supp. 636 (E.D.N.Y. Mar. 22, 1994) ................................................................... 9

*Chanel, Inc. v. Doubinine,*
2008 WL4449631 (E.D.N.Y. Oct. 2, 2008) ................................................................... 10

*Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*,
794 F.2d 38 (2d Cir.1986) ............................................................................................. 18

*Cisco Systems, Inc. v. Shenzhen Tianheng Networks Co.,*
2019 WL 8584614 (E.D.N.Y. Nov. 29, 2019) ............................................................... 11

*CJ Products LLC v. Concord Toys Intern. Inc.*,
2011 WL 178610 (E.D.N.Y. Jan. 19, 2011) .................................................................. 18

*CJ Products LLC v. Snuggly Plushez LLC*,
809 F. Supp. 2d 127 (E.D.N.Y. Aug. 22, 2011). ............................................... 19, 20, 21

*Corning Inc. v. PicVue Electronics, Ltd.,*
365 F. 3d 156 (E.D.N.Y. Apr. 22, 2004) ....................................................................... 27

*Edward B. Beharry & Co. v. Bedessee Imports Inc.*,
2006 WL 3095827 (E.D.N.Y. Oct. 31, 2006) ................................................................ 14

*El Greco Leather Prods. Co., Inc. v. Show World*,
  806 F.2d 392 (2d Cir. 1986)...................................................................................... 19

*EnviroCare Technologies, LLC v. Simanovsky*,
  2012 WL 2001443 (E.D.N.Y. Jun. 4, 2012) ............................................................ 10

*Est. of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*,
  812 F. Supp. 2d 186 (E.D.N.Y. 2011) ..................................................................... 16

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)...................................... 11

*Godinger Silver Art Ltd. v. Shenzen Tangson Houseware Co.*,
  2023 WL 2969299 (E.D.N.Y. Jan. 31, 2023)........................................................... 17

*Group One Ltd. v. GTE GmbH*,
  523 F. Supp. 3d 323 (E.D.N.Y. Feb. 3, 2021) ........................................................... 2

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*,
  527 U.S. 308 (1999) ................................................................................................. 24

*Gucci America, Inc. Weixing Li*,
  2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011)......................................................... 25

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
  826 F.3d 27 (2d Cir. 2016)....................................................................................... 14

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*,
  219 F.3d 104 (2d Cir. 2000)..................................................................................... 21

*In re Vuitton et Fils, S.A.*,
  606 F.2d 1 (2d Cir. 1979)........................................................................................ 2, 9

*Innovation Ventures, LLC v. Ultimate One Distributing Corp.*,
  2017 WL 10088143 (E.D.N.Y. March 21, 2007)..................................................... 11

*ISC-Bunker Ramo Corp. v. Altech, Inc.*,
  765 F. Supp. 1310 (N.D. Ill. 1990) .......................................................................... 21

*Judscott Handprints, Ltd. v. Washington Wall Paper Co., Inc.*,
  377 F. Supp. 1372 (E.D.N.Y. Apr. 22, 1974). ........................................................ 18

*K-Beech, Inc. v. Does 1-37*,
  2011 WL 13307934 (E.D.N.Y. Sept. 16, 2011) .................................................... 2, 25

*Kipling Apparel Corp. v. Rhys*,
  2016 WL 8814345 (S.D.N.Y. Feb. 12, 2016)........................................................... 23

*Klipsch Grp., Inc. v. Big Box Store Ltd.,*
  2012 WL 4901407 (S.D.N.Y. Oct. 11, 2012) .................................................................. 24

*Koon Chun Hing Kee Soy & Sauce & Sauce Factory, Ltd. v. Kun Fung USA Trading,*
  2007 WL 2406887 (E.D.N.Y. Aug. 16, 2007) .................................................................. 23

*Kraft Gen. Foods, Inc. v. Allied Old English, Inc.,*
  831 F. Supp. 123 (S.D.N.Y.1993) ..................................................................................... 18

*Lane Capital Mgmt, Inc. v. Lane Capital Mgmt., Inc.,*
  192 F.3d 337 (2d Cir. 1999)............................................................................................... 14

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,*
  51 F.3d 982 (11th Cir. 1995) ............................................................................................. 24

*Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.,*
  2019 WL 7599931 (S.D.N.Y. May 29, 2019) ........................................................... 2, 9, 23

*Lorillard Tobacco Company v. Jamelis Grocery, Inc.,*
  378 F. Supp. 2d 448 (S.D.N.Y.2005).................................................................................. 14

*Mattel, Inc. v. Agogo Store,*
  2022 WL 525698 (S.D.N.Y. Jan. 31, 2022) ....................................................................... 27

*Mattel, Inc. v. AnimeFun Store,*
  2021 WL 765766 (S.D.N.Y. Feb. 26, 2021) ....................................................................... 17

*McGraw-Hill Global Education Holdings, LLC v. Mathrani,*
  295 F. Supp. 3d 404 (S.D.N.Y. Dec. 12, 2017) ................................................................. 10

*Merkos L'Inyonei Chinuch, Inc. v. John Doe Nos.1-25,*
  172 F. Supp. 383 (E.D.N.Y. Nov. 9, 2001) ....................................................................... 27

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,*
  312 F.3d 94 (2d Cir. 2002).................................................................................................. 18

*Mint, Inc. v. Amad,*
  2011 WL 1792570 (S.D.N.Y. May 9, 2011) ....................................................................... 20

*Motorola, Inc. v. Abeckaser,*
  2009 WL 1362833 (E.D.N.Y. May 14, 2009) ..................................................................... 23

*New Line Cinema Corp. v. Easter Unlimited, Inc.,*
  1989 WL 248212 (E.D.N.Y. Jul. 19, 1989)........................................................................ 27

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*
  704 F. Supp. 2d 305 (S.D.N.Y. 2010) ........................................................................... 18, 20

*North Atlantic Operating Co. v. Evergreen Distributors, LLC,*
  2013 WL 5603810 (E.D.N.Y. Sep. 30, 2013) ................................................................. 27

*NYP Holdings v N.Y. Post Publ'g Inc.,*
  63 F. Supp. 3d 328 (S.D.N.Y. 2014) ..................................................................... 19, 20

*Polaroid Corp. v. Polarad Electronics Corp.,*
  287 F.2d 492 (2d Cir. 1961) ......................................................................................... 14

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.,*
  970 F.2d 552 (9th Cir. 1992) ................................................................................. 24, 25

*Saban Entm't, Inc. v. 222 World Corp.,*
  865 F. Supp. 1047 (S.D.N.Y.1994) ............................................................................. 18

*Salvatore Ferragamo S.p.A. v. Does 1-56,*
  2020 WL 774237 (S.D.N.Y. Feb. 18, 2020) ............................................................... 19

*Savin Corp. v. Savin Grp.,*
  391 F.3d 439(2d Cir. 2004) .......................................................................................... 14

*Shashi, Inc. v. Ramada Worldwide, Inc.,*
  2005 WL 552593 (W.D. Va. Mar. 1, 2005) ................................................................. 21

*Spin Master Ltd v. ALVY,*
  2021 WL 5746426 (S.D.N.Y. Nov. 17, 2021) ............................................................. 27

*Spin Master Ltd.,*
  325 F. Supp. 3d at 420 ..................................................................................... 14, 15, 17

*Streamlight, Inc. v. Gindi,*
  2019 WL 6733022 (E.D.N.Y. Oct. 1, 2019) ............................................................... 17

*Topps Co., Inc. v. Gerrit J. Verburg Co.,*
  41 U.S.P.Q.2d 1412 (S.D.N.Y. 1996) ........................................................................ 14

*Trebco Specialty Prod. Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, &
  Unincorporated Associations Identified on Schedule A Hereto,*
  2022 WL 19520881 (E.D.N.Y. June 9, 2022) ........................................................ 24, 27

*UN4 Productions v. Doe–173.68.177.95,*
  No. 17-CV-3278, 2017 WL 2589328 (E.D.N.Y. Jun. 14, 2017) ............................... 2, 23

*Van Praagh v. Gratton,*
  993 F. Supp. 2d 293 (E.D.N.Y. 2014) ........................................................................ 17

*Wallace Berrie & Co., Inc. v. Custom Styled Toys, Inc.,*
  1982 WL 1288 (E.D.N.Y. Aug. 16, 1982) .................................................................. 18

*Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi,*
2021 WL 1249631 (S.D.N.Y. April 5, 2021) ........................................................ 2, 9, 23

*WPIX, Inc. v. ivi, Inc.,*
765 F. Supp. 2d 594 (S.D.N.Y. 2011) ................................................................. 20

**Statutes**

15 U.S.C. § 1051 et seq. ........................................................................................9

15 U.S.C. § 1057(b) ...............................................................................................15

15 U.S.C. § 1114(1) ...............................................................................................14

15 U.S.C. § 1116(a) ...............................................................................................22

15 U.S.C. § 1117(a)(1) ...........................................................................................24

15 U.S.C. § 1125(a) ...............................................................................................16

15 U.S.C. § 504 ......................................................................................................3

17 U.S.C. § 101 et seq. ..........................................................................................9

17 U.S.C. §§ 502, 503 .........................................................................................3, 22

28 U.S.C. § 1331 ...................................................................................................9

28 U.S.C. § 1367(a) ..............................................................................................9

28 U.S.C. § 1391 ...................................................................................................9

28 U.S.C. §§ 1338(a)-(b) ......................................................................................9

C.P.L.R. § 302(a)(1) .........................................................................................9, 10

C.P.L.R. § 302(a)(3) ..............................................................................................9

**Other Authorities**

4 *Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) (3d ed. 1970) .........19

5 *J. Thomas McCarthy*, *McCarthy on Trademarks and Unfair Competition* § 30:40
(4th ed.) ..................................................................................................23, 25

**Rules**

Fed. R. Civ. P. 26(b)(2) .......................................................................................25

Fed. R. Civ. P. 4(k) ..................................................................................................9

Fed. R. Civ. P. 65(b) ....................................................................................8, 11, 22

Fed. R. Civ. P. 65(c) ..............................................................................................26

Fed. R. Civ. P. 65(d) ..........................................................................................3, 26

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

This application (the "Application") arises from Defendants'[1] improper marketing and sale of counterfeit products online. Plaintiff Life Vac LLC ("Plaintiff") markets airway clearance devices and related products (the "Life Vac Products").  Photographs of the Life Vac Products are the subject of Plaintiff's copyrights listed in **Exhibit 1** hereto (the "LIFEVAC Copyrights"), including U.S. Copyright Office Registration Nos. VA 2-332-974, VAu 1-489-169, VAu 1-489-170, VA-2-335-339, VA 2-335-352, and VAu 1-495-820 as well as the LIFEVAC trademark, which is covered by U.S. Trademark Registration No. 6,735,265 (the "LIFEVAC Trademark").

Defendants have trodden on Plaintiff's intellectual property rights by promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit versions of the Life Vac Products. This illicit conduct is being carried out through various online marketplace accounts listed in **Schedule A** to the Complaint (collectively, the "Defendant Internet Stores"). In short, Defendants run a counterfeiting operation with disregard for anything except generating profits.

Defendants, for their part, attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff has filed this action to combat Defendants' infringement and counterfeiting of Plaintiff's registered copyrights and trademark, as well as to protect unknowing consumers from purchasing counterfeit Life Vac Products over the internet. In that regard, Plaintiff seeks to enjoin Defendants' ongoing unlawful activities, and Plaintiff respectfully requests that this Court issue *ex parte* relief, including:

(1) a temporary restraining order against defendants (as described in **Schedule A** attached to the Complaint ("Defendants")), enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of counterfeit products bearing, using, or infringing upon Plaintiff's LIFEVAC Copyrights or LIFEVAC Trademark (the "Counterfeit Products");

(2) a temporary restraint of certain of Defendants' assets, described below, to preserve Plaintiff's right to an equitable accounting;

---

[1] "Defendants" are described in Schedule A attached to the Complaint.

1

(3) expedited discovery allowing Plaintiff to inspect and copy Defendant's records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit Products, as well as of Defendants' financial accounts; and

(4) ordering Defendants to show cause why a preliminary injunction should not issue on the return date of the Application.

In light of the covert nature of counterfeiting activities being undertaken by Defendants and the vital need to establish an economic disincentive for counterfeiting, courts regularly issue orders awarding such relief.[2]

Plaintiff's well-pleaded allegations, which are supported by the Declarations submitted in connection with the Application, make clear that such relief is necessary and proper. First, Plaintiff has demonstrated a strong likelihood of success on the merits. Plaintiff is the owner of valid copyright registrations and trademark and is the distributor of genuine Life Vac Products. Defendants' use of Plaintiff's copyrights and trademark to sell Counterfeit Products has and continues to irreparably harm Plaintiff by diminishing Plaintiff's goodwill in its products, damaging Plaintiff's reputation, and causing consumer confusion. Monetary damages are inadequate to compensate Plaintiff for these harms. Defendants, by contrast, face no cognizable harm whatsoever if they are enjoined from continuing with their misconduct. This makes injunctive relief particularly appropriate in this matter.

---

[2] *See, e.g.*, *In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief); *UN4 Productions v. Doe–173.68.177.95,* No. 17-CV-3278, 2017 WL 2589328 (E.D.N.Y. Jun. 14, 2017); *K-Beech, Inc. v. Does 1-37,* No. 11 Civ. 3995, 2011 WL 13307934 (E.D.N.Y. Sept. 16, 2011); *Group One Ltd. v. GTE GmbH,* 523 F. Supp. 3d 323 (E.D.N.Y. Feb. 3, 2021); *Cengage Learning, Inc. v. Doe 1,* 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018); *Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi,* No. 21-cv-00370, 2021 WL 1249631 (S.D.N.Y. April 5, 2021); *Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*, No. 1:19-cv-04715, 2019 WL 7599931, at *2 (S.D.N.Y. May 29, 2019)

Furthermore, issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit Products. The public has a right to know what it is purchasing.

In addition, an order authorizing the transfer of the Defendant Internet Stores to Plaintiff's control is warranted pursuant to 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). Such relief will prevent the Defendants' continued use of online marketplaces to carry out acts of infringement.

Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as online marketplace platforms and financial institutions, that are in active concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Further, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 504. Finally, an order authorizing service of process by e-mail and electronic publication is appropriate due to Defendants' intentional efforts to conceal their identities and covertly operate their business online. Serving Defendants electronically is the best—indeed, likely the only—method for notifying them of this action and providing them the opportunity to defend and present their objections.

Stated simply, the relief sought in this action is necessary to protect Plaintiff's legitimate interests in the LIFEVAC Copyrights, LIFEVAC Trademark, and Life Vac Products. Accordingly, Plaintiff respectfully requests entry of their proposed order in its entirety.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Intellectual Property Protects Its Successful Life Vac Brand

Plaintiff develops, designs, and creates high-quality utility products, including the original airway clearance device, the Life Vac Products. Declaration of Michael Plunkett, filed concurrently herewith ("Plunkett Decl."), ¶¶ 7-8. In 2014, Plaintiff launched the first Life Vac

medical device. The commercial success of the Life Vac medical device inspired Plaintiff's team to develop an improved product in 2016. Plunkett Decl., ¶ 8.



Since their introduction, the Life Vac Products have been and are the subject of substantial and continuous marketing and promotion by Plaintiff in the industry and to consumers. For example, Plaintiff promotes Life Vac Products through its website (https://lifevac.net), and through online advertisement campaigns on, among other platforms, Facebook, Instagram, and Twitter. *Id.* at ¶ 12. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting Life Vac Products. *Id.* at ¶ 14.

Plaintiff safeguards its brand and investment in Life Vac Products by way of intellectual property protections. Plaintiff is the registered owner of the LIFEVAC Copyrights. Plunkett Decl. ¶ 5. Plaintiff is also the registered owner of the LIFEVAC Trademark, which has been continuously used and never abandoned. *Id.* at ¶ 6.

### B.     <u>Defendants Are Counterfeiters of Life Vac Products</u>

The success of the Life Vac Products has resulted in significant counterfeiting of the same. *Id.* ¶ 15. Plaintiff has identified numerous Defendant Internet Stores that sell Counterfeit Products to consumers in this Judicial District.  *Id.* ¶ 16.

Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and cost legitimate businesses billions in lost revenue annually. Declaration of Christopher Tom filed concurrently herewith, ¶ 3 and Ex. 1 thereto. According to intellectual-property-rights seizures-statistics reports issued by Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion. *Id.* ¶ 4 and Ex. 2. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.* ¶ 5 and Ex. 3.

1. <u>Defendants Operate Legitimate-Looking Internet Stores</u>

Defendants typically facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Life Vac Products. Plunkett Decl., ¶ 19. Specifically, the Defendant Internet Stores operate on Amazon.com ("Amazon") and accept payment in U.S. dollars via credit cards and other widely accepted methods, so that they appear to operating legitimate stores.  *Id.* To sell their Counterfeit Products, nearly all of Defendant Internet Stores use the same Amazon Standard Identification Number ("<u>ASIN</u>") Life Vac and its authorized retailers use to sell genuine Life Vac Products.  By "hijacking" the ASIN, the Defendant Internet Stores trick unknowing consumers into buying their counterfeit products when they are seeking to buy genuine Life Vac Products. Further, the Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit Products from genuine Life Vac products. *Id.* Plaintiff has not licensed or authorized Defendants to use the LIFEVAC Copyrights or LIFEVAC Trademark and none of the Defendants is an authorized retailer of genuine Life Vac Products. *Id.*

2.      Defendants Illegitimately Optimize the Defendant Internet Stores for
        Search Engines

Defendants also commonly deceive unknowing consumers by using the LIFEVAC Trademark without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the internet looking for websites relevant to consumer searches for Life Vac Products. *Id.* ¶ 21. Additionally, Defendants typically use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the listings for the Defendant Internet Stores show up at or near the top of relevant search results and misdirect consumers searching for genuine Life Vac Products. *Id.* Defendants often utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. *Id.* Lastly, Defendants also deceive unknowing consumers by using the LIFEVAC Copyrights or LIFEVAC Trademark without authorization within the product descriptions of their Defendant Internet Stores to attract customers. *Id.*

3.      Defendants Conceal Their Identities

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. *Id.* ¶ 23. For example, many Defendants utilize registered agents, who register Defendant Internet Stores as limited liability companies at separate addresses, to conceal the owners' identity and contact information. *Id.* Defendants further regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* These are some of the many common tactics used by the Defendants to conceal their identities—and the full scope and interworking of their massive counterfeiting operation—to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id.* ¶ 24. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. *Id.* In addition, Counterfeit Products for sale in the Defendant Internet

Stores bear similar irregularities and indicia of being related to one another—including the same design, color scheme, instructions, and packaging.  These similarities suggest that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. *Id.* The Defendant Internet Stores also include other notable common features, including use of the same meta data, illegitimate SEO tactics, and the use of the same text and images. *Id.*

4.      Defendants Evade Enforcement

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. *See id.* ¶ 26. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. *See id.* Additionally, counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as Amazon accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. *Id.*

Overall, Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with counterfeit versions of the LIFEVAC Copyrights and the LIFEVAC Trademark in the same transaction, occurrence, or series of transactions or occurrences.

As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeiting network, and the relationship among Defendants. In the event that Defendants provide additional credible

information regarding their identities, Plaintiff intends to take appropriate steps to amend the Complaint.

### III.   ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Plaintiff's reputation and the goodwill symbolized by the LIFEVAC Copyrights and LIFEVAC Trademark. *See id.* ¶¶ 29-34. To stop Defendants' sale of Counterfeit Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, the transfer of the Defendant Internet Stores to Plaintiff to redirect to a website providing notice of these proceedings and the freezing of Defendants' assets. Without the relief requested by Plaintiff's Application, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the LIFEVAC Copyrights and LIFEVAC Trademark via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Counterfeit Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the LIFEVAC Copyrights and LIFEVAC Trademark and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will change to a new online store or platform and move any assets from U.S.-based bank accounts. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See, e.g.*, *In re Vuitton et Fils S.A.*, 606 F. 2d 1, 4 (2d Cir.

1979) ("giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all.") (quoting Developments in the Law Injunctions, 78 Harv.L.Rev. 994, 1060 (1965)); *Century Home Entertainment, Inc. v. Laser beat, Inc.*, 859 F. Supp. 636, 638 (E.D.N.Y. Mar. 22, 1994) ("it is the norm in this district that where a danger of destruction or hiding of the evidence exists to grant *ex parte* orders [].")*; Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, 2021 WL 1249631, at *2 (S.D.N.Y. Apr. 5, 2021) ("If Defendants are given notice of Plaintiffs' application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*, 2019 WL 7599931, at *2 (S.D.N.Y. May 29, 2021) ("Defendants may easily and quickly transfer the registrations of their internet domain name, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiffs' ability to obtain meaningful relief."). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the trademark infringement, copyright infringement, and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the unfair competition claim in this action that arises under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### A.    This Court May Exercise Personal Jurisdiction Over Defendants

Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k) because the Defendant Internet Stores accept orders of Counterfeit Products from and offer shipping to New York

addresses located in this Judicial District. Indeed, the Eastern District of New York regularly exercises personal jurisdiction over websites using registered copyrights and/or trademarks without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to New York residents over the Internet. *See Alcon Laboratories, Inc. v. Allied Vision Group, Inc.*, No. 18-CV-02486, 2018 WL 10550777, at *6 (E.D.N.Y. Dec. 22, 2018) (shipments of "test purchases" of allegedly infringing products sold by third-party websites to New York by defendants, provide a sufficient basis for the Court to exercise specific jurisdiction over a defendant); *see also Chanel, Inc. v. Doubinine,* No. 04-CV-4099, 2008 WL4449631, at *2 (E.D.N.Y. Oct. 2, 2008) ("Websites that are of a commercial nature and permit consumers to place orders and e-mail questions can confer personal jurisdiction"); *EnviroCare Technologies, LLC v. Simanovsky,* No. 11-CV-3458, 2012 WL 2001443, at *4 (E.D.N.Y. Jun. 4, 2012) (sale of allegedly counterfeit goods purchased online through Defendants' Amazon storefront and shipped to "Plaintiff in New York by Amazon.com amounted to transacting business in New York sufficient to establish long arm jurisdiction under C.P.L.R. 302(a)(1)"). The Southern District of New York has likewise exercised personal jurisdiction over similar alleged infringements. *See, e.g.*, *McGraw-Hill Global Education Holdings, LLC v. Mathrani,* 295 F. Supp. 3d 404, 412 (S.D.N.Y. Dec. 12, 2017) ("sales to New York customers through online marketplaces constitute relevant minimum contacts" and operation of a "website through which customers in the United States—including those in New York—may purchase Plaintiffs' textbooks provides an additional basis for jurisdiction under § 302(a)(1)").

As detailed in the Complaint and in the Plunkett Decl., Plaintiff's investigation into Defendants confirms that the Defendant Internet Stores allow for Counterfeit Products to be sold and shipped to addresses in this Judicial District. *See* Plunkett Decl., ¶ 16. In fact, Exhibit 3 to the Plunkett Decl. contains copies of screenshot evidence from each Defendant Internet Store reflecting the marketing and ability to order Counterfeit Products to the Eastern District of New York, and proof of orders actually placed and accepted by Defendants to the Eastern District of

New York. For that reason alone, this Court can exercise personal jurisdiction over each of the Defendants.

**B.**      **Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *Cisco Systems, Inc. v. Shenzhen Tianheng Networks Co.,* No. 19-cv-06609, 2019 WL 8584614, at *1 (E.D.N.Y. Nov. 29, 2019); *see also 3M Company v. CovCare, Inc.,* No. 21-cv-01644, 2021 WL 7162292, at *2 (E.D.N.Y. Apr. 7, 2021). A party seeking to obtain either must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) that the balance of hardships favors the plaintiff; and (4) that the public interest will not be disserved if an injunction issues. *Id*.

When a party requests an *ex parte* temporary restraining order, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damages will result to the movant before the adverse party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning, Inc. v. Doe 1,* 2018 WL 2244461, at *1 (S.D.N.Y. Jan. 17, 2018) (quoting Fed. R. Civ. P. 65(b)(1)).

**C.**      **Plaintiff Will Likely Succeed on the Merits**

1.      Plaintiff Will Likely Succeed on Its Copyright Infringement Claim.

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991). "Copyright infringement, like trademark infringement, is a strict liability offense." *Innovation Ventures, LLC v. Ultimate One Distributing Corp.,* No. 12-CV-534, 13-CV-6397, 2017 WL 10088143, at *5 (E.D.N.Y. March 21, 2007).

11

Here, Plaintiff is likely to succeed on the merits of its copyright infringement claim. First, Plaintiff owns all exclusive rights in the copyrights for the images of Life Vac Products listed in Exhibit 1 hereto, including without limitation copyrights covered by U.S. Copyright Office Registration Nos. VA 2-332-974, VAu 1-489-169, VAu 1-489-170, VA-2-335-339, VA 2-335-352, and VAu 1-495-820. Plunkett Decl., ¶ 5; *see* 17 U.S.C. § 501(b) (stating legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement).

Second, Plaintiff has shown that Defendants have made unauthorized copies of Plaintiff's works. Specifically, Defendants deceive unknowing consumers by using the LIFEVAC Copyrights without authorization within the product descriptions of their Defendant Internet Stores to attract customers. Plunkett Decl., ¶ 21. As a visual representation, Defendants have directly copied Plaintiff's copyrighted images for the Life Vac Products, or, alternatively, Defendants' representations of Plaintiff's copyrights for the Life Vac Products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's copyrighted images for the Life Vac Products and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrighted images for the Life Vac Products. As just one example, Defendants deceive unknowing consumers by using the LIFEVAC Copyrights without authorization within the product descriptions of their Defendant Online Store to attract customers as follows:

*Exemplary Images of Plaintiff's Registered LIFEVAC Copyrights*




12

*Compared to Exemplary Images from Defendants' Listings of Counterfeit Products*





Complaint at ¶ 56.

Overall, it is clear that Defendants have copied Plaintiff's image copyrights without Plaintiff's consent.

2.   <u>Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim.</u>

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable

13

imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Courts analyze trademark infringement claims under the Lanham Act under a two prong test: (1) whether the plaintiff's mark is entitled to protection and (2) whether defendant's use of the mark is likely to cause confusion. *See, e.g.*, *Guthrie Healthcare Sys. v. ContextMedia, Inc.,* 826 F.3d 27, 37 (2d Cir. 2016); *Savin Corp. v. Savin Grp.,* 391 F.3d 439, 456 (2d Cir. 2004) (quotation omitted); *C.M.B. Prods., Inc. v. SRB Brooklyn, LLC*, No. 19CV02009ENVCLP, 2022 WL 2704506, at *3 (E.D.N.Y. July 12, 2022); *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d, 413, 420 (S.D.N.Y. 2018).

"The first prong is satisfied by showing that a mark is valid and registered, owned by a registrant, and that the registrant has the exclusive right to use the mark in commerce." *Spin Master*, 325 F. Supp. 3d at 421 (citing *Guthrie Healthcare Sys.*, 825 F.3d at 37). A valid certificate of registration of the asserted mark satisfies this standard. *Id.* (quoting *Lane Capital Mgmt, Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999). Once a plaintiff has established that its mark is entitled to protection, courts in this Circuit apply the eight "Polaroid factors" balancing test to determine whether the defendant's use of the mark is likely to cause confusion. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Because counterfeit marks are inherently confusing, however, "courts in this District generally agree that 'where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each Polaroid factor because counterfeit marks are inherently confusing.'" *Edward B. Beharry & Co. v. Bedessee Imports Inc.*, No. 06-CV-5707 JBW, 2006 WL 3095827, at *2 (E.D.N.Y. Oct. 31, 2006) (quoting *Lorillard Tobacco Company v. Jamelis Grocery, Inc*., 378 F. Supp. 2d 448 (S.D.N.Y.2005)); *Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y. 1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors."). "The

14

sale of counterfeit goods is sufficient use to establish liability." *Spin Master*, 325 F. Supp. 3d at 422.

Regarding the first two elements, Plaintiff's LIFEVAC Trademark is inherently distinctive and is registered with the United States Patent and Trademark Office on the Principal Register. The LIFEVAC Trademark has been continuously used since at least 2022 and Plaintiff has and continues to widely market and promote the LIFEVAC Trademark in the industry and to consumers. Plunkett Decl., ¶ 12. The registration for the LIFEVAC Trademark is valid, subsisting, and in full force and effect. *See id.*, ¶ 6 and Ex. 2 attached thereto. The registration for the LIFEVAC Trademark constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the LIFEVAC Trademark pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use the LIFEVAC Trademark, and none of the Defendants is an authorized retailer of genuine Life Vac Products. *See* Plunkett Decl., ¶ 17.

In this case, Plaintiff has established a likelihood of confusion. As shown in the examples below, Defendants are selling Counterfeit Products using counterfeit marks identical to or substantially indistinguishable from the LIFEVAC Trademark, and with respect to the goods, identical to the genuine Life Vac Products.





Due to their long-standing use and wide acceptance by the public, the LIFEVAC Trademark has become famous and associated with high quality Life Vac Products. The LIFEVAC Trademark is distinctive when applied to the Life Vac Products. The mark signifies to consumers that the products come from Plaintiff and are manufactured to the highest quality standards. Because the counterfeit goods are similar and have identical and similar uses, consumers will be confused and think that Defendants' products are genuine Life Vac Products or are sponsored or endorsed by Plaintiff.  Moreover, Defendants are intentionally using the LIFEVAC Trademark to confuse and deceive the consuming public into thinking that Defendants' Counterfeit Products are manufactured by or emanate from Plaintiff. Defendants are purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation.

Plaintiff has thus established that it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

3.     <u>Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim.</u>

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that (1) "it has a valid trademark entitled to protection under the Act, and (2) defendants' actions are 'likely to cause confusion.'" *Est. of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *Van Praagh v. Gratton*, 993

F. Supp. 2d 293, 301 (E.D.N.Y. 2014). Because the LIFEVAC Trademark is a registered mark, and Plaintiff has established a likelihood of success on the merits of their trademark infringement and counterfeiting claim against Defendants, as shown above, a likelihood of success on the merits for Plaintiff's false designation of origin claim is also established.

        4.      <u>Plaintiff Is Likely to Succeed on Its New York Unfair Competition Claim.</u>

The elements of an unfair competition claim under New York common law are the same as those governing trademark infringement claims under the Lanham Act, 'except the common law [unfair-competition claim] requires a showing of bad faith or intent.'" *Godinger Silver Art Ltd. v. Shenzen Tangson Houseware Co.,* No. 21CIV2674LDHVMS, 2023 WL 2969299, at *8 (E.D.N.Y. Jan. 31, 2023) (quotation and citations omitted). "The essence of a claim for unfair competition under New York law is that the defendant has misappropriated the labors and expenditures of another in a manner likely to cause confusion or to deceive purchasers as to the origin of the goods." *Spin Master*, 325 F. Supp. 3d at 424 (internal quotations and citations omitted). "'Under New York law, a presumption of bad faith attaches to the use of a counterfeit mark.'" *Streamlight, Inc. v. Gindi*, No. 18-CV-987 (NG), 2019 WL 6733022, at *7 (E.D.N.Y. Oct. 1, 2019), *report and recommendation adopted*, No. 18-CV-987 (NG) (RLM), 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019*); Mattel, Inc. v. AnimeFun Store,* 2021 WL 765766, at *7 (S.D.N.Y. Feb. 26, 2021) (same); *Spin Master*, 325 F. Supp. 3d at 424 (citing cases).

Because Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants, as shown above, bad faith is presumed, and therefore Plaintiff has established a likelihood of success on the merits for its New York Unfair Competition claim.

**D.**    <u>**There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**</u>

Irreparable harm warranting the issuance of a temporary restraining order exists when a defendant infringes either a copyright or a trademark.  In the context of copyright infringement, the

Second Circuit has held that the harm to the plaintiff's property interest is irreparable in light of possible market confusion. *See Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96–97 (2d Cir. 2002) ("Since [the defendant] sells essentially the same product as [the plaintiff] to the same market, it will obviously suffer considerable loss if [the defendant] disseminates its [infringing products], because each sale of an [infringing product] probably results in one less sale of the [plaintiff's product]. [Plaintiff] thus satisfies the 'irreparable harm' prong of the preliminary injunction standard.").  Similarly, courts in this District have found that "[i]Irreparable injury to the good will and business reputation plaintiffs have earned in the marketplace may result from plaintiffs' inability to exercise control of the quality and workmanship of [infringing copies of the copyrighted works]," *Wallace Berrie & Co., Inc. v. Custom Styled Toys, Inc.*, No. 82-C-1820, 1982 WL 1288, at *3 (E.D.N.Y. Aug. 16, 1982), that "[f]looding the market with counterfeit products will not only result in lost sales, but . . . will impair plaintiffs' reputation. [] a harm that cannot be redressed by the monetary damages available at law," *CJ Products LLC v. Concord Toys Intern. Inc.*, No. 10-CV-5712, 2011 WL 178610, at *5 (E.D.N.Y. Jan. 19, 2011), and that "continuing injury to one's reputation is more easily enjoined than recompensed." *Judscott Handprints, Ltd. v. Washington Wall Paper Co., Inc.*, 377 F. Supp. 1372, 1380 (E.D.N.Y. Apr. 22, 1974).

As for trademark infringement, "it is well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.* 704 F. Supp. 2d 305, 325 (S.D.N.Y. 2010) (citing *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 43 (2d Cir.1986);  *Saban Entm't, Inc. v. 222 World Corp.,* 865 F. Supp. 1047, 1056 (S.D.N.Y.1994); *Kraft Gen. Foods, Inc. v. Allied Old English, Inc.,* 831 F. Supp. 123, 136 (S.D.N.Y.1993)). Indeed, when infringement leads to confusion, "the requisite irreparable harm is established as a matter of course. *NYC Triathlon*, 704 F. Supp. 2d at 325–26. "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality

18

of the goods manufactured and sold under the holder's trademark." *El Greco Leather Prods. Co., Inc. v. Show World*, 806 F.2d 392, 395 (2d Cir. 1986). As such, the inability of the trademark holder to control the quality of the infringing goods sold constitutes irreparable harm. *3M Co.,* 458 F. Supp. 3d at 192; *see also* 4 *Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm.

Here, Defendants' unauthorized use of the LIFEVAC Copyrights and LIFEVAC Trademark, along with their substantial efforts to mislead and confuse consumers, have and continue to irreparably harm Plaintiff through diminished goodwill and brand confidence, reputational damage, loss of exclusivity, and loss of future sales. *See* Plunkett Decl., ¶¶ 29-34. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328, 341-42 (S.D.N.Y. 2014); *Salvatore Ferragamo S.p.A. v. Does 1-56*, 2020 WL 774237, at *5 (S.D.N.Y. Feb. 18, 2020). Indeed, the extent of the harm to a plaintiff resulting from "[i]njecting the market with [copyright] counterfeit products will not only result in lost sales, but will impair plaintiffs' reputation achieved through considerable time and effort. This type of harm cannot be redressed by monetary damages available at law." *CJ Products LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. Aug. 22, 2011).

Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* temporary restraining order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). *See* Plunkett Decl., ¶¶ 29-34. As such, Plaintiff should be granted the relief sought in this Application.

### E.     The Balancing of Equities Tips in Plaintiff's Favor

If the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief

is not granted, then it must next determine whether the balance of the hardships between the plaintiff and defendant, if an injunction issues, tips in the plaintiff's favor. *Cengage Learning*, 2018 WL 2244461, at *1.

As demonstrated above, Defendants' unauthorized use of the LIFEVAC Copyrights and LIFEVAC Trademark, and its substantial efforts to mislead and confuse consumers, has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Conversely, Defendants have and are likely to continue benefiting from the sales of counterfeit Life Vac Products unless injunctive relief is issued in this case. A defendant "who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *CJ Products v. Snuggly Plushez,* 809 F. Supp. 2d at 146 (citing *Mint, Inc. v. Amad,* No. 10-CIV-9395, 2011 WL 1792570, at *3 (S.D.N.Y. May 9, 2011)); *see also Broadcast Music, Inc. v. 3 Lanza LLC,* No. 2:19-CV-2637, 2021 WL 25355, at *6 (E.D.N.Y. Jan. 4, 2021) ('[I]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product . . . . The balance of hardships, therefore, clearly tips in plaintiffs' favor") (quoting *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 620-21 (S.D.N.Y. 2011)).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of counterfeit products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### F. Issuance of the Injunction Is in the Public Interest.

Federal courts have long held that in addition to protecting the property right of an individual, intellectual property laws are also concerned with the protection of the public from being deceived. *NYC Triathlon*, 704 F. Supp. 2d at 344 ("[T]he public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."); *NYP Holdings*, 63 F. Supp. 3d at 342 (consumers have a "protectable interest in being free from confusion, deception and mistake"); *see also Shashi, Inc.*

*v. Ramada Worldwide*, *Inc.,* No. 7:05-cv-00016, 2005 WL 552593, at *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion.").

Here, an injunction is in the public interest because it will stop Defendants from violating federal intellectual property law and prevent consumer confusion. "[I]t is uncontested that there exists a strong policy in favor of defending copyrights" and Plaintiff "assert[s] an action to enforce [its] U.S. copyrights, an area in which the U.S. has a strong public interest." *CJ Products v. Snuggly Plushez*, 809 F. Supp. 2d at 146. Further, the public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiff's approval and endorsement. An injunction serves the public interest in this case because "[t]rademark laws exist to protect the public from confusion." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107–08 (2d Cir. 2000); *see also ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1332 (N.D. Ill. 1990) (injunction serves the public interest by preserving the integrity of the copyright laws).

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services. Unless Defendants' unauthorized use of the LIFEVAC Copyrights and LIFEVAC Trademark is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Application is in the public interest.

**IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.**

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such

21

terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark . . . ." 15 U.S.C. § 1116(a); *see also* 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed).

Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts here warrant such relief. *See Wallace Berrie,* 1982 WL 1288, at *1 ("where the court finds a likelihood of product confusion exists, and where advance notice to defendants is likely 'to serve only to render fruitless further prosecution of the action,' [] a plaintiff is entitled to have issued an *ex parte* Temporary Restraining Order").

**A.**   **A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate.**

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of either the LIFEVAC Copyrights or LIFEVAC Trademark on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to LIFEVAC Copyrights and LIFEVAC Trademark and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the LIFEVAC Copyrights and LIFEVAC Trademark.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of many Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Products.

Many courts in this District have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g.*, *Koon Chun Hing Kee Soy & Sauce & Sauce Factory, Ltd. v. Kun Fung USA Trading,* No. 07- CV-2568, 2007 WL 2406887 (E.D.N.Y. Aug. 16, 2007) (ex parte order of seizure and Temporary Restraining Order issued against defendants selling counterfeit food products bearing plaintiff's trademark and trade dress); *UN4 Productions v. Doe–173.68.177.95,* No. 17-CV-3278, 2017 WL 2589328 (E.D.N.Y. Jun. 14, 2017) (ex parte order of expedited discovery for purposes of allowing email service, and subpoenas on internet service providers to ascertain true identity, email, and addresses granted against fourteen unidentified Doe defendants charged with unlawfully downloading and distributing unauthorized copies of plaintiff's copyrighted work over a third party online file distribution network); *see also Weili Fang,* 2021 WL 1249631; *Lindsey Adelman Studio,* 2019 WL 7599931; *Cengage Learning,* 2018 WL 2244461*; Kipling Apparel Corp. v. Rhys,* 2016 WL 8814345 (S.D.N.Y. Feb. 12, 2016).

**B.**   **Preventing the Fraudulent Transfer of Assets Is Appropriate.**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, it appears that the Defendants in this case hold most of their assets in foreign countries, making it easy to hide or dispose of assets, which would render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a complaint seeks relief in equity. *Motorola, Inc. v. Abeckaser,* No. 07-CV-3963, 2009 WL 1362833, at *3 (E.D.N.Y. May 14, 2009) (the "purpose of freezing assets is to preserve 'security for plaintiff's future recovery on an accounting of the counterfeiter's profits,'" quoting *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed.)); *see also Cengage Learning,* 2018 WL

23

2244461, at *3 ("where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable owner to freeze assets") (internal quotations and citations omitted); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters.*, *Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, because Plaintiff has shown a strong likelihood of succeeding on the merits of their trademark infringement and counterfeiting claim, the Lanham Act provides that Plaintiff is entitled, "subject to the principles of equity, to recover . . . defendant's profits." 15 U.S.C. § 1117(a)(1). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. *See Klipsch Grp., Inc. v. Big Box Store Ltd.,* 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) ("Courts in this district have exercised their equitable authority powers in Lanham Act cases to restrain assets to preserve the return of profits derived from the sale of counterfeit goods and to insure counterfeiting [p]laintiffs the accounting to which they are entitled.") (collecting cases). Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

Both courts in this District and the Southern District have previously entered asset restraining orders in infringement cases brought by plaintiffs against defendants engaged in the sale of counterfeit products through online marketplaces.  *See, e.g.*, *Trebco Specialty Prod. Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, No. 1:22-CV-02729-BMC, 2022 WL 19520881, at *3-4 (E.D.N.Y. June 9, 2022) (order third parties to restrain assets of online merchants selling counterfeit plush toy pacifiers); *Cengage Learning,* 2018 WL 2244461, at *3-4 (enter asset restraining order for defendants accused of selling counterfeit textbook). The Southern District, citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Cengage Learning,* 2018 WL 2244461, at *3 (citing *Grupo Mexicano*, 527 U.S. at 324–26); *see also Gucci America, Inc.*

*Weixing Li,* No. 10 Civ. 4974, 2011 WL 6156936, *3 (S.D.N.Y. Aug. 23, 2011), *aff'd in relevant part and vacated on other grounds*, 768 F.3d 122 (2d Cir. 2014) (same). Because the publishers sought an accounting of the defendants' profits, an equitable remedy, the Court found that it had the authority to freeze the defendants' assets. *Id.*; *see also Animale Grp. Inc.*, 256 F. App'x at 709; *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd*, 970 F.2d at 559; *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question . . . were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013)

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### C.   Plaintiff Is Entitled to Expedited Discovery

A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when [] authorized by a court order. *See UN4 Productions,* 2017 WL 2589328, at *1. Courts in this District generally use a flexible standard and in order to be granted such an order "a party must demonstrate the reasonableness of the request or make a showing of good cause." *K-Beech, Inc. v. Does 1-37,* No. 11 Civ. 3995, 2011 WL 13307934, at *1 (E.D.N.Y. Sept. 16, 2011) (permitting service of Rule 45 subpoenas on interest service providers before Rule 26(f) conference in copyright infringement matter, since plaintiffs had no other means to identify Defendants' true identities).

Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *K-Beech*, 2011 WL 13307934, at *2.  As described above, Defendants are using third-party payment processors such as Visa, PayPal, and Amazon, which helps to increase their anonymity by interposing a third party

25

between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment-system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). As Defendants have engaged in many deceptive practices to hide their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.[3]

## V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion and Fed. R. Civ. P. 65(c) "gives the district court wide discretion to set the amount of a bond, and even to dispense with the

---

[3] The proposed Temporary Restraining Order also provides for the issuance of a single original summons in the name of "THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b).  The issuance of a single summons is consistent with the Advisory Committee Notes to the 1993 Amendment to Rule 4(b), which states "If there are multiple defendants, the Plaintiffs may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993).

bond requirement where there has been no proof of likelihood of harm" *Corning Inc. v. PicVue Electronics, Ltd.,* 365 F. 3d 156, 158 (E.D.N.Y. Apr. 22, 2004).

Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Five Thousand U.S. Dollars ($5,000.00). Plaintiff submits that a bond in such amount is fair and reasonable under the circumstances and consistent with the bond amounts required by this court in a similar situation. *See Life Vac LLC v. Trebco Specialty Prod. Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, No. 1:22-CV-02729-BMC, 2022 WL 19520881, at *4 (E.D.N.Y. June 9, 2022) ($10,000 bond in copyright infringement case against numerous online merchants); *Merkos L'Inyonei Chinuch, Inc. v. John Doe Nos.1-25,* 172 F. Supp. 383 (E.D.N.Y. Nov. 9, 2001) ($1,000 bond); *see also New Line Cinema Corp. v. Easter Unlimited, Inc.*, No. 89-CV-2017, 1989 WL 248212 (E.D.N.Y. Jul. 19, 1989) ($10,000 bond); *see also Mattel, Inc. v. Agogo Store*, No. 21 CIV. 1507, 2022 WL 525698 (S.D.N.Y. Jan. 31, 2022) ($5,000.00 bond); *Spin Master Ltd v. ALVY*, No.19-CV-3452, 2021 WL 5746426 (S.D.N.Y. Nov. 17, 2021) ($10,000.00 bond); *see also North Atlantic Operating Co. v. Evergreen Distributors, LLC,* No. 13–CV–4974, 2013 WL 5603810 (E.D.N.Y. Sep. 30, 2013) ($30,000.00 bond).

## VI.   <u>CONCLUSION</u>

Plaintiff's business, its Life Vac brand, and consumers are being irreparably harmed. Without entry of the requested relief, the sale of Counterfeit Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiff. Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's copyright and trademark rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form

submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intends to present a motion for preliminary injunction.

Dated:      February 29, 2024                          Respectfully submitted,

                                                              BOIES SCHILLER FLEXNER LLP

                                          By:___*/s/ Christopher Tom*_____
                                                              Christopher Tom
                                                              55 Hudson Yards
                                                              New York, NY 10001
                                                              (212) 446-2300
                                                              ctom@bsfllp.com

                                                              *Attorney for Plaintiff Life Vac LLC*